**ALDRIDGE SEED FARMS, Inc., v. TEXAS CENTENNIAL CENTRAL EXPOSITION, Inc.**

No. 12325.

Court of Civil Appeals of Texas. Dallas.

June 20, 1936.

Storey, Sanders & Sherrill and E. Taylor Armstrong, all of Dallas, for appellant.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, for appellee.

BOND, Justice.

Aldridge. Seed Farms, Inc., appellant, entered into a contract with Texas Centennial Central Exposition, Inc., appellee, whereby appellant was given the right to use exhibit space in the agricultural building of the Texas Centennial Central Exposition, at Dallas, to display a' miniature cotton gin, miniature cotton bales, and souvenirs relating to cotton; and the exclusive concession to sell such souvenirs in the exposition buildings and grounds.

The contract, in form of applications executed by appellant and approved by appellee, is prolix, and, so far as necessary to a disposition of this appeal, it specifically provides that a registration fee of $120, in the form of certified check, draft, or money order, payable to Texas Centennial Central Exposition, shall accompany the application for the exhibit space, and the balance ($360) shall be paid on or before January 1, 1936; that the Aldridge Seed Farms, Inc., shall forward to Texas Centennial Central Exposition on or before January 1, 1936, sketches of its exhibits, and to furnish all plans and specifications for construction on or before March 1, 1936; that Texas Centennial Central Exposition shall have the right to censor all exhibits of any kind and to close any of the same which may be objectionable to the managing director of exposition, and his opinion shall be conclusive; that the Aldridge Seed Farms, Inc., shall construct, equip, and operate the concession at its own expense and in conformity with the "General Conditions and Rules & Regulations" for exhibit space and concessions, and that the general conditions and rules and regulations, by reference, are expressly made a part of the contract between the parties.

The "General Conditions and Rules & Regulations" are shown to be intended for the guidance and information of applicants generally for exhibit space and concessions, and the contract between the parties provides that they shall be and become a part of the applications, and shall govern the installation, maintenance, operation, disposition, and removal of the exhibits and concessions, and the Texas Centennial Central Exposition therein reserves the right to construct, amend, or add to the said conditions, rules, and regulations, and to issue others whenever it deems it necessary to do so.

The terms of the "General Conditions and Rules & Regulations" for exhibitors provide that: "Booths or other enclosures

necessary for displaying and protecting Exhibitors and for the safety of the general public shall be constructed by The Exposition Corporation or by some other agency approved by The Exposition Corporation, at the expense of the Exhibitor"; that "No contractor or subcontractor shall be engaged by any Exhibitor to perform work or furnish material in the Exposition Grounds without the Exhibitor's first consulting The Exposition Corporation, since The Exposition Corporation reserves the right to exclude from the Exposition Grounds any contractor or subcontractor objectionable to it"; that "A special permit must be obtained from The Exposition Corporation for machinery or other appliances in motion, in addition to the Permit issued to the Exhibitor for Exhibit Space. The installation and operation of such machines or appliances will be handled under rules and regulations to be issued by The Exposition Corporation. * * * The Exposition Corporation reserves the right to refuse to issue any such special permit for any such Exhibit involving machinery in motion * * *"; that "The amount of the insurance to be provided by the Exhibitor * * * together with the form of policies and the companies in which the same may be issued, shall be submitted to The Exposition Corporation and shall be subject to the approval of The Exposition Corporation * * *"; and that "The Exposition Corporation may require any concessionaire at Concessionaire's expense to install or use coin devices, cash registers, turnstiles, ticket choppers, duplicate tag devices, tickets, or tags, or any other equipment or devices necessary or proper in the opinion of The Exposition Corporation, for recording attendance, service, or sales in connection with the Concession." The Exposition Corporation is granted the right to terminate the contract and cancel any and all permits existing, if payments for exhibit space are not made by the exhibitor within the time specified in the contract, and be canceled immediately upon breach of any term or condition of the contract.

The appellant instituted this suit against appellee to avoid an express cancellation of the contract by appellee, and to enforce specific performance by means of an injunction to restrain the appellee from interfering with appellant in the building of its exhibit and the carrying out of the contract, and for a mandatory injunction to compel specific performance, and, further, for damages by virtue of an alleged unwarranted breach by appellee.

On application to the court, a temporary restraining order was issued; and thereafter the appellee filed its motion to dissolve and its answer, in which it urged a general demurrer, numerous special exceptions, a general denial, and pleaded especially numerous acts committed by the appellant such as to avoid the performance of the contract, and alleged facts to sustain appellee's right to cancel the agreement.

The court, on hearing, rendered judgment dissolving the temporary restraining order, denied all injunctive and mandatory relief sought by appellant, basing its order on appellant's pleadings and evidence adduced on the hearing.

The evidence is undisputed, and shows that appellant executed and delivered to appellee the applications for exhibit space and concession on or about December 10, 1935, together with a cash payment of $120. The Exposition Corporation, on January 25, 1936, executed an acceptance of the applications, whereupon the contract between the parties became effective. In due course, on January 30, 1936, appellee mailed to appellant a demand for payment of the $360, the amount referred to as being due January 1, 1936; a subsequent request for payment was made under date of March 3, 1936, and still another on March 8, 1936. On April 18, 1936, appellant wrote a letter to appellee, in which it stated, among other things: "It will be possible for us to take care of the balance of our account within the next few weeks." Whereupon the appellee, under date of April 22, 1936, gave notice to appellant of a termination of the exhibit space and concession contract; and, in this notice, after referring to the failure to make the payment of the $360, balance of the cash payment provided for in the exhibit application, the notice continued: "Although the time for making such payment has long since expired, you have not as yet made payment in full, and in accordance with the provisions of the General Conditions and Rules and Regulations of Exhibitors, dated May 1, 1935, which are part of your contract, and in particular, paragraph 4 (b) of Sec. 2 of such instrument, we hereby advise and notify you that the said exhibit space contract is now canceled and terminated." Paragraph 4 (b) of section 2, referred to, provides: "If payments for Exhibit Space

are not made by the Exhibitor within the time specified, the allotment of space made to the Exhibitor may, at the option of The Exposition Corporation, be canceled by The Exposition Corporation without further notice. * * *"

It will be observed that by the terms of the contract above stated a large discretionary power is vested in the Exposition Corporation to approve all sketches, plans, and specifications for exhibit booths; as to the approval of the contractor or contractors who perform work or furnish material for the installation of machinery; the terms and conditions of insurance policies; and the devices for the accounting of revenues derived from authorized exhibits and concessions, as well as many other discretionary powers pertaining to the exposition and of all contracts made in reference thereto.

A very careful consideration of the record convinces us that there are facts and issues to be determined only upon a full hearing upon the merits of the case, and it depends upon facts that entitle the parties to a trial by a court or jury. To discuss this record in its present phase might, in a way, prejudice it, which we do not feel justified in doing; suffice to say, that we think the evidence presented at the hearing justified the conclusion by the trial court that appellant did not submit the sketches, plans, and specifications for the exhibit booth, as required by the contract and at the time stated therein; that it did not obtain the approval of appellee of any contractor or contractors who were to perform the work or furnish material for appellant's exhibit; that it did not obtain a permit from appellee to install machinery or other appliances in motion to operate the miniature cotton gin and to manufacture cotton bales; that it did not comply with the contract as to the insurance policies and the accounting devices, and, furthermore, appellant did not pay the balance due by it to appellee for the exhibit space, or offer to do so, until after the termination of the contract by appellee, when for the first time it tendered the balance due, and then sought to carry out the further terms of the contract.

It is a settled rule of law in this state that: "Specific performance of a contract may be enforced by means of an injunction restraining the commission of acts in violation of the contract, which is merely a negative decree of specific performance. * * * The jurisdiction of equity to grant such an injunction is substantially coincident with its jurisdiction to compel performance, and ordinarily the granting of the injunction is governed by the same principles, rules and practice as apply to specific performance." 38 Tex. Jur. pp. 643, 644. However, the exercise of the power to grant restraining or mandatory injunction is within the sound discretion of the trial court, as is also the power to dissolve the injunction, and, where the court has exercised such discretion, its action will not be disturbed on appeal, unless it clearly appears from the record that there has been an abuse of such discretion. We are unable to say in this case that the trial court abused the discretion which it exercised in dissolving the restraining order and refusing to grant injunctive relief; therefore, without comment on the weight of the testimony, judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.